## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

RACHEL RODRIGUES,

      Plaintiff,

v.

CAROLYN W. COLVIN, in her capacity as
Commissioner of the Social Security
Administration,

      Defendant.

Case No. 2:12-cv-03056-MHW

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

## INTRODUCTION

This case involves a challenge to the denial of supplemental security income by the Social Security Administration. Currently pending before the Court are cross motions for summary judgment filed by Plaintiff Rachel Rodrigues and Defendant Commissioner of Social Security.[1] (Dkts. 20 & 21). Plaintiff is represented by D. James Tree and Defendant is represented by Assistant United States Attorneys Jeffery R. McClain and Pamela Jean DeRusha. The Court has reviewed the motions and supporting memoranda as well as the Administrative Record and deems these motions suitable for disposition without oral

---

[1] Carolyn W. Colvin became the Acting commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1**

argument.   For the reasons that follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed an application for supplemental security income on July 9, 2008, alleging disability beginning November 30, 2007. (Tr. 118-120; 121-23.)   Plaintiff's application was denied both initially and on reconsideration. (Tr. 78-81; 85-87.) Administrative Law Judge ("ALJ") Marie Palachuk held a hearing on September 16, 2010, taking testimony from Plaintiff, an impartial Medical Expert, and an impartial Vocational Expert. (Tr. 39-73.)   ALJ Palachuk granted Plaintiff's request for thirty days to provide additional medical records from a surgeon whom Plaintiff claimed had advised against spinal fusion.  However, no additional records were provided.  (Tr. 14; 66; 72-73.)  The ALJ issued a decision finding Plaintiff not disabled on October 22, 2010. (Tr. 14-27.)  Plaintiff filed a timely appeal to the Appeals Council.  (Tr. 114-16.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ in September of 2010, Plaintiff was 31 years old. (Tr. 52.)  She has a twelfth grade education followed by some college and past work experience as a mini-storage facility rental clerk, attendant at lodging facilities, cashier, cocktail waitress, and stock clerk.  (Tr. 25; 142-46; 168-75; 203-11).  On her disability report, Plaintiff alleged disability due to a combination of impairments including fibromyalgia, degenerative disc disease, migraines, and learning disability.  (Tr. 134 .)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  See 20 C.F.R. § 416.920.  The claimant has the burden of proving a disability in the first four steps of the sequential evaluation, after which the burden moves to the Commissioner at the fifth step.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. 20 C.F.R § 416.920(b). The ALJ found Petitioner had not engaged in substantial gainful activity since November 1, 2007. (Tr. 40).

At step two, it must be determined whether claimant suffers from a severe impairment, or a combination of impairments that is severe according to 20 CFR § 416.920(c).  The ALJ found that Plaintiff had the following impairments, all of which rated as severe: fibromyalgia, lumbar spondylosis, sacroiliitis, status post right knee surgery times two, status post right wrist surgery times two, borderline diabetes, asthma, mood disorder not otherwise specified (NOS), and learning disorder.  (Tr. at 16.*)*

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment, as set forth in 20 C.F.R Part 404, Subpart P Appendix 1.  If the claimant's impairments meet or equal a listed impairment and meets the duration requirements set forth in 20 C.F.R. § 416.909, the analysis is done and the claimant is conclusively shown to be disabled.  If, however, the claimant's impairments do not meet or equal the criteria for the listed impairments*,* the ALJ must determine a claimant's residual

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3**

functional capacity ("RFC") according to 20 C.F.R. § 416.920(e). An individual's residual functional capacity is an assessment of the most a person can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

In this case, at step three, the ALJ found that Plaintiff's symptoms from her physical and mental impairments did not meet or equal a listed impairment. (Tr. 19). Next, the ALJ found that Plaintiff had a residual functional capacity consistent with an ability to perform light work as defined in 20 C.F.R. § 416.967(b), with some limitation on activities such as climbing ladders, ropes and scaffolds, kneeling, crawling, concentrated exposure to vibrations, and moderate exposure to hazards such as dangerous machinery or unprotected heights. (Tr. 21.) The ALJ determined that Plaintiff was capable of sitting and walking only four hours with a sit/stand option every 60 minutes and that she could occasionally climb ramps or stairs, balance, stoop, and crawl, and interact with the public. (Tr. 21.)

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 C.F.R. § 416.965. Here, the ALJ determined that Plaintiff was unable to perform her past relevant work as a mini storage facility rental clerk, attendant at lodging facilities, cashier, cocktail waitress, or stock clerk. (Tr. 25.) The fifth and final step of the analysis requires an assessment of whether the claimant is able to do other work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, education and work experience.

Here, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4**

national economy that Plaintiff can perform such as office helper, mail clerk, and outside

deliverer. (Tr. 26.)  Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 27.)

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual

will be determined to be disabled only if his physical or mental impairments are of such

severity that he not only cannot do his previous work but is unable, considering his age,

education, and work experience, to engage in any other kind of substantial gainful work

which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security

Commissioner if the decision is supported by substantial evidence and is not the product of

legal error.  *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and

internal quotations omitted).  It is more than a scintilla but less than a preponderance.  *Id.*

Finally, it is well-settled that if there is substantial evidence to support the decision

of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from

the record . . ." even "where the evidence is susceptible to more than one rational

interpretation." *Id.*  The Court may not substitute its judgment for that of the ALJ.  *Robbins*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5**

*v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## ISSUES

Plaintiff argues that the ALJ erred in the following ways: (1) by improperly discrediting Plaintiff, (2) by rejecting the opinion of Plaintiff's treating doctor, and (3) by improperly evaluating Plaintiff's impairments at Step 2.

## DISCUSSION

### A.    Credibility Determination

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct;

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6**

claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Courts have also held that an ALJ may take the claimant's daily activities into account. *Light v. Social Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). In addition to those factors, the ALJ may consider prior inconsistent statements regarding the symptoms or, "other testimony by the claimant that appears less than candid." *Chaudhry*, 688 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Id*.

Here, the ALJ's credibility determination was based upon several factors. First, the ALJ stated that no doctor supports Plaintiff's opinion that she is unable to perform work activity at the sedentary level. (Tr. 22.) The ALJ then referred to notations in the record in support of her credibility finding. For example, the treating physician, Dr. Nicola J. Bocek on November 7, 2006, noted her belief that Plaintiff's symptoms seemed to be out of proportion to the physical findings and that there was a possibility of some issues of secondary gain. (Tr. 22.) She further noted in November of 2007 that Plaintiff was alert, cheerful and in no distress and her physical examination was unremarkable. (Tr. 22.) On November 14, 2008, Dr. Bocek noted that Plaintiff stated she walks a lot

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7**

and walks anywhere from two blocks to several miles and rarely sits down.  (Tr. 22.)  On November 24, 2008, although Plaintiff stated that her back and left leg symptoms were unchanged, she was alert, cheerful, and in no acute distress.  Dr. Bocek further noted that although her MRI findings were not normal, they did not indicate that a surgery would be helpful.  (Tr. 22.)

The ALJ then addressed the results of the various diagnostic tests.  She noted that the November 19, 2008 MRI only revealed degeneration with small right paracentral protrusion  of the T11-12 disc and small left paracentral protrusion of the L5-S1 disc.  (Tr. 23.)  All other discs were "unremarkable."  (Tr. 297.)  A December 8, 2008 CT scan of the lumbar spine showed only mild spondylosis at L5-S1.  (Tr. 23.)  This CT scan also noted that the balance of the exam was "unremarkable."  (Tr. 294.)  A March 23, 2010 MRI, which tested the cervical spine, was negative at all levels.  (Tr. 23; 419.)

Finally, with regard to her physical impairments, the ALJ noted several statements of Plaintiff's treating physician that suggested that Plaintiff was somewhat exaggerating her symptoms and limitations.  (Tr. 23.)  On July 21, 2009, Dr. Bocek noted that Plaintiff's combination of physical, social, and psychological issues made it unlikely that she would voluntarily seek employment at any time and further noted that she did not think a total disability rating was in Plaintiff's best interest.  (Tr. 23, 436.)  In August, 2009, Dr. Bocek also noted that Plaintiff had not had a followup appointment with the pain clinic since April.  (Tr. 23.)  Dr. Bocek also noted at that visit that she questioned

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8**

Plaintiff's motivation for getting better.  (Tr. 23, 434.)  Similarly, on October 6, 2009, Dr.

Bocek noted that although Plaintiff complained of back pain if she had to sit for any

length of time, she appeared to sit comfortably in the exam room and was alert, cheerful,

and in no distress.  (Tr. 23, 430.)  Dr. Bocek further noted her belief that the degree of

Plaintiff's disability was somewhat exaggerated and that Plaintiff could perform sedentary

work.  (Tr. 23, 430.)

The ALJ also questioned Plaintiff's credibility as to the extent of her mental

impairments.  She noted Dr. Jody Veltkamp's clinical diagnostic psychological evaluation

report in February of 2007 that Plaintiff demonstrated only mild difficulties with

inattention and concentration and that her alleged difficulties were not significant with

regard to either short-term or sustained attention and concentration.  (Tr. 23, 235-41.)

During a January 2008 psychiatric evaluation with Central Washington Comprehensive

Mental Health ("CWCMH"), Plaintiff denied having anxiety or panic attacks.  (Tr. 23,

304.)  The ALJ referred to CWCMH records of April 1, 2009 indicating that Plaintiff was

not taking her prescribed mood stabilizer due to side effects and discontinued a second

medication after two days.  (Tr. 23-24, 465, 469.)   The ALJ also referred to records of

July 2009, August 2009, and January 2010 which indicated Plaintiff continued to engaged

in church attendance, church activities including singing, visiting her boyfriend, and

shopping at Walmart and her nightmares were manageable.  (Tr. 24, 479, 486, 490-91.)

Finally, the ALJ referred to comments in the CWCMH chart note that her counselor

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9**

reported that Plaintiff was evasive and a vague historian.  The ALJ also referred to a March 15, 2010 chart note in which her therapist stated that Plaintiff "over-estimates her level of anxiety as she doesn't exhibit signs of anxiety."  (Tr. 24, 492.)

In challenging the ALJ's credibility finding, Plaintiff points to the fact that Dr. Bocek's chart note of November 2006 predated the onset date and that Dr. Bocek later determined that Plaintiff was unable to work fulltime after an MRI indicated a cause for her symptoms.  However, Dr. Bocek's chart notes, as shown above, reveal a continued suspicion of exaggeration of symptoms.  Furthermore, Plaintiff's therapist also expressed the opinion that Plaintiff was exaggerating her anxiety symptoms, a finding that Plaintiff does not address.

Plaintiff also argues that the ALJ ignored other portions of chart notes indicating that Plaintiff was still having back pain and three to five headaches per week.  However, the ALJ mentioned the abnormal MRI results and the migraines although she found that the migraines were non-severe as discussed below.  Most significantly, Plaintiff does not rebut the ALJ's reliance on the normal results of the psychological examination or identify any specific functional limitations that should have been included in the residual functional capacity finding.

Finally, Plaintiff alleges that the ALJ did not consider her fibromyalgia or migraines in reaching her credibility determination.  However, these conditions were included in the summary of Plaintiff's allegations.  As with her mental impairments,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10**

Plaintiff has failed to assert any specific functional limitations caused by her fibromyalgia and migraines.  Accordingly, Plaintiff has failed to demonstrate any harm resulted from these alleged errors.  *Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The Court finds based on the above that the ALJ properly followed the requisite two-step analysis in determining Plaintiff's credibility.  First, she determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  She then proceeded to the next step of determining the intensity, persistence, and limiting effects of the symptoms.  *See Batson v. Comm'r of Social Security Administration*, 359 F.3d 1190, 1195-96 (9th Cir. 2004) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  In rejecting Plaintiff's testimony regarding her impairments, the ALJ supported  her decision with sufficiently specific findings, identified what testimony was not credible and what evidence undermined her complaints, and supported her credibility finding 'with specific, clear and convincing reasons.'"  *Chaudhry*,  688 F.3d at 672.  The Court "may not substitute [its] judgment for that of the ALJ" but rather must affirm the ALJ's credibility decision "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision."  *Batson*, 359 F.3d at 1196.  That there may be more than one reasonable interpretation of the record, and the claimant's contrary interpretation does not necessarily warrant reversal of the ALJ's finding.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The Court cannot

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11**

second guess the ALJ's credibility finding if it is supported by substantial evidence in the record. *Batson*, *id*. *See also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The Court therefore finds that the ALJ's credibility determination was supported by substantial evidence, and "the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Tommasetti*, 533 F.3d at 1039.

**B.    Rejection of the Opinion of Plaintiff's Treating Physician**

There are three types of physicians distinguished in the regulations implementing Title II and Title XVI of the Act: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians.) *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). In general, a treating physician's opinion is given more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Holohan*, 246 F.3d at 1202. An ALJ is not bound by a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Furthermore, an ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons. *Id*. Where a treating physician's opinion is contradicted by another physician's opinion, the AJL may only reject the treating physician's opinion by providing "specific and legitimate reasons that are supported by

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12**

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff notes that Dr. Bocek found in 2008 and 2010 that she was limited to a sedentary level of exertion and could not sustain work activity for more than ten hours per week. (Tr. 371-73, 403-05.) These findings were submitted in response to a Work First Documentation Request for Medical Disability Condition. Plaintiff further notes the ALJ's reliance on chart notes that indicate she was alert and cheerful where the same note reported that Plaintiff was still having back pain and migraines and also notes that the fact that she had times when she felt better between pain flare-ups and headaches should not be a reason to reject Dr. Bocek's opinion. Finally, Plaintiff notes that Dr. Bocek was well aware of Plaintiff's potential for exaggeration and factored it into her assessments of claimant's limitations rather than accepting Plaintiff's complaints at face value.

As noted by Defendant, Dr. Bocek's opinion in a form completed for the Department of Health and Human Services Work First Program two years earlier that Plaintiff could not perform full-time work was contradicted by the opinion of medical consultant Dr. Norman Staley who found in his Physical Residual Functional Capacity Assessment that Plaintiff was capable of light exertion. (Tr. 362-69.) As required, the ALJ provided specific and legitimate reasons to reject Dr. Bocek's opinion as to the ability to work full-time and to credit Dr. Staley's opinion.

The ALJ noted that Dr. Bocek's opinion that Plaintiff could not work full-time were inconsistent with her findings that Plaintiff was "neurologically intact" and had a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13**

"normal range of motion."  (Tr. 24, 247, 249, 339.)  Where a physician's assessments on a

questionnaire are inconsistent with the physician's medical records, the ALJ has grounds

for rejecting a treating physician's opinion of a claimant's limitations.  *Tommasetti v.

Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ also noted that Dr. Bocek's

opinion appeared to be based on Plaintiff's subjective complaints (which the ALJ found

not credible) given that the objective MRI findings revealed only mild degenerative

changes.  An ALJ may reject "checkoff reports that do not contain any explanation of the

bases of their conclusions" and are conclusory and inconsistent with earlier assessments.

*Molina*, 674 F.3d at 1111.  Finally, the ALJ noted that Dr. Bocek opined that Plaintiff

could be trained for a sedentary job and subsequent records indicate a continued concern

of symptom exaggeration.

   The Court finds that the ALJ provided specific and legitimate reasons for rejecting

Dr. Bocek's opinion that Plaintiff could not work full time.

## C.    Evaluation of Plaintiff's Impairments at Step Two

   At step two, the ALJ must determine whether a claimant suffers from a severe

impairment or a combination of impairments that limits the ability to do basic work

activities.  20 C.F.R. § 416.920(c).  As stated above, the ALJ found that Plaintiff had

several severe impairments:  fibromyalgia, lumbar spondylosis, sacroiliitis, status post

right knee surgery times two, status post right wrist surgery times two, borderline

diabetes, asthma, mood disorder not otherwise specified, and a learning disorder.  (Tr.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14**

16.)  In other words, the ALJ found in Plaintiff's favor at step two and continued with the sequential process.

### 1.    Migraines

Plaintiff has the initial  burden of proving a disability in steps one through four. *Burch*, 400 F.3d at 679.  Therefore, she has the burden of demonstrating that her migraines are a severe impairment.  A medical impairment is considered "severe" when "it significantly limits an individual's physical or mental abilities to do basic work activities." *Id*. at 682.

Plaintiff points to Dr. Bocek's chart note in November of 2007 stating that she was still having three to five migraines per week.  (Tr. 249-50.)  She contends that the notation of the frequency of her migraines and the diagnosis "in other medical records of migraines" is evidence that her migraines were severe.  *Pls.' Mem.* at 17.  Plaintiff does not identify those other medical records.

The Court finds that Plaintiff has not carried her burden of demonstrating that her migraines are severe.  Dr. Bocek's chart note was written in connection with Plaintiff's visit for a "complete physical exam."  (Tr. 250.)  The statement that Plaintiff still has three to five migraines per week is followed by a further note that Plaintiff takes Advil for the migraines on a "fairly frequent basis."  (Tr. 250.)  Her headaches, described as "headache migraine unspecified" are listed as a chronic problem since November of 1998. (Tr. 250.)  However, there is no further mention of migraines in the notes of the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15**

November 9, 2007 visit in the treatment plan or medication management discussed at the end of the visit.  (Tr. 248-50.)  There is no indication that the headaches were severe or debilitating.

In a clinical diagnostic psychological evaluation conducted February 8, 2007 in connection with a program with the Division of Vocational Rehabilitation, the examiner noted that Plaintiff's "medical history is significant for chronic headaches" that had gone on as long as Plaintiff could remember.  (Tr. 236.)  However, the examiner stated that "[w]hile she calls them migraines, they are only treated with Advil and they occur three to four times a week."  (Tr. 236.)

The Court's independent review of the medical records did not reveal any specific diagnoses of migraines or any tests to determine the nature of her headaches.  While there are notations in the records of migraines or "chronic headaches," they appear to be based on Plaintiff's self-report only.  Finally, there is no discussion in the medical reports or in Plaintiff's testimony at the hearing before the ALJ that her so-called migraines affected her ability to work.  The ALJ did not err in not finding Plaintiff's migraines to be a severe impairment.  *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (ALJ did not err in not classifying claimant's carpal tunnel syndrome as a severe impairment where the only medical evidence addressing the impairment was a letter dated well before the alleged onset of disability stating that a physician "identified a probably unrelated carpal tunnel syndrome" and a followup visit note indicating

claimant's statement that his arm symptoms had improved and that he had few, if any, complaints).

### 2.    Bi-Polar Disorder

Without discussion, Plaintiff states that the ALJ erred at step two when she excluded bi-polar disorder diagnosed by both Dr. Birdlebough and Dr. Bocek (citing Tr. 426.)  The Court notes that the record to which Plaintiff refers as constituting Dr. Bocek's diagnosis is a December 22, 2009 chart note pertaining to an office visit for the "chief complaint" of "Recheck, elevated blood sugar."  (Tr. 426.)  In the History portion of that note, Dr. Bocek states that "She has been diagnosed with Bipolar Disorder and PTSD." Dr. Bocek did not diagnose the disorder.  She merely reported that a diagnosis had been made.  Dr. Birdlebough conducted a psychiatric evaluation on January 7, 2009 and diagnosed Bipolar II Disorder.  (Tr. 304-05.)  Subsequent Medication Management Documents from CWCMH refer to the diagnosis as "Other and Unspecified Bipolar Disorders, Other."  (*E.g.,* Tr. 317, 318, 319, 322, 323.)

Defendant notes Plaintiff's failure to identify any additional functional limitations that should have been included in the residual functional capacity determination due to the disorder and contends that the diagnosis in and of itself does not presume a related limitation in a disability analysis.  *Def.'s Mem.* at 12.  Plaintiff  admits that "the record is essentially silent on what limitations would be caused by [the mental impairments]," but counters that the record did not establish that the impairments do not cause any significant

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17**

limitations.  *Pl.'s Reply* at 8.  She concludes that the ALJ should have further developed the issue rather than presume that GAF scores ranging from 45-50 would not cause significant limitations.  *Id*. at 8-9.

The Court notes that while not finding Plaintiff's bipolar disorder to be a severe impairment, the ALJ found her mood disorder, not otherwise specified (NOS) to be severe.  (Tr. 16.)  The basis for the ALJ's finding was the CWCMH assessment characterized as "other and unspecified bipolar disorders" and noted her complaints including mood swings, difficulty in concentrating, and tiredness during the day and further discussed the records from CWCMH indicating Plaintiff's receipt of treatment on a bi-weekly to monthly basis from March 9, 2009 to March 15, 2010, noted the mood fluctuations, and noted the difficulties she had with medications for the disorder.  (Tr. 18-19.)

The Court finds that although the ALJ did not specifically refer to bipolar disorder in the list of severe impairments, her designation of "mood disorder, not otherwise specified (NOS)" was based on the same records and essentially constituted a finding that her bipolar disorder was severe.  The ALJ obviously felt the information in the mental health records warranted a finding of "severe."  The Court finds that either the ALJ did in fact find the bipolar disorder to be a severe impairment or her failure to do so was harmless since she considered the same material offered by Plaintiff.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18**

## CONCLUSION

The Court finds that the ALJ's decision was supported by substantial evidence and free from error.

## ORDER

1.    Defendant's Motion for Summary Judgment (Dkt. 21) is **GRANTED.**

2.    Plaintiff's motion for summary judgment (Dkt. 20) is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant.



DATED: December 19, 2013

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19**